Good morning, Your Honor. It's Dick Herman for the appellants. It's very straightforward. Let me look at my brief. This was a case where there was summary judgment, which was entirely decided on the basis of admissions, which were deemed admitted. Why were they deemed admitted? That's an interesting question, Your Honor. They were deemed admitted because the court didn't grant an extension that we requested. They were late. They were late because the court didn't grant an extension. That's correct, Your Honor. Yes. And are the rules are deemed admitted? And we moved to set them aside. You aren't entitled as a matter of law to have them set aside. In these circumstances, I think we were, Your Honor. Where is that in the rule? The rule is that, what the law is, that if the admissions basically preclude resolving a case on the merits, that they'll be set aside. And outside of the case law, in my brief, there are only a few cases, and they basically say, basic principle of federal jurisprudence is that cases are decided on the merits. What's the point of having a rule about admissions anyway if they're set aside and you can discard them? Well, it depends. I think it depends on what it is. If the admissions are clearly erroneous and clearly result in a miscarriage of justice and clearly deny the plaintiffs a trial on the merits, then I think they have to be set aside. I think that's the law. I just don't see how the ruling of district court comports with the basic principle that cases are tried on the merits. Do you think there's a rule to that effect? I think that the case law is a rule. And you think that the rules should be followed. Is that correct? Yes. And how about following the rules about when things are supposed to be answered and so on and so forth? You know, they don't care. Look, this was not a perfectly litigated case on either side. One of the fundamental problems was that plaintiffs provided their Rule 26 discovery back in December, and all we got was a list of documents. And when the documents were eventually produced, redacted, which are fascinating to look at, and they've apparently been provided separately to the court, you know, you have these pages where everything is blanked out. We said, and which were provided after the discovery cutoff, before the discovery cutoff, we asked for an extension of the discovery cutoff, and we said we haven't gotten these documents. And we also asked. Did you make a motion then? Yes. We made a motion, and we said extend the discovery cutoff and make it part of the order that plaintiffs don't have to respond until we get these documents, which they say their defendants say they're going to produce, but they didn't. So we did, plaintiffs did ask the court for relief timely, and the court said, and the court sort of held that and then said, well, now the discovery cutoff has passed, so I'm not going to do it. Well, at that point, the admissions were deemed admitted, not because we hadn't done anything, but because we requested relief and the district court denied it. Then the district court, then we went and moved for relief from the admissions, and there are in the excerpts at least two full sets of denials by all the plaintiffs, of responses to admissions which are full denials by all the plaintiffs. There should be a set of declarations by all the plaintiffs which factually deny everything, and yet the court said, well, you've admitted everything. You've admitted you have no case. Which case was filed first, the city of Santa Ana case or this case? This case. And then you were proceeding against the city of Santa Ana and litigating that case? We filed this case, and then substantially later we filed the case against the city of Santa Ana, and we tried for TROs against both. And what happened to the city of Santa Ana case? The city of Santa Ana case wound up in front of Judge Wilson who dismissed it, or invited us to dismiss. He denied our motion and invited us to dismiss. And did you? Yes. I think we have your argument in hand. Do you want to save some time for rebuttal? Yes, thank you, Your Honor. Good morning, Your Honors, and may it please the Court, Christina Springer, appearing on behalf of the County of Orange and Sheriff Hutchins, who are appellees in this case. I agree with Mr. Herman's categorization that this is a very straightforward case, but for very different reasons, Your Honor. I see the federal rules and the local rules of this district as tools to ensure that litigation proceeds fairly and that all parties have a voice in preparing and bringing their case to trial. Those are the rules that lead us to the judgment, which is entirely appropriate and should be affirmed, and those are the rules that very clearly lit the path for Mr. Herman to obtain the relief during the litigation that he is seeking now. I would like to point out just a few things, and then certainly we'll entertain any questions. No motion was made regarding requests for admissions under Rule 36 until five days before the motion for summary judgment hearing. No motion, in fact, was made at all at any time during the litigation until that one. What we have is a series of ex parte applications, none of which specifically sought relief under Rule 36, all of which were generalized requests for a state of discovery, and please, Your Honor, let me start the case over because now I have a problem because dispositive motions have started and I don't have any evidence. Plaintiffs, appellants during the litigation never served any discovery. They did not respond to any discovery. They did not appear for their depositions, and they filed, like I said, no motions until the first one that came after the motion for summary judgment had been filed, and that's also an interesting point, Your Honor. Appellees of the county and Sheriff Hutchins filed a motion for judgment on the pleadings relatively early in the case because the allegations as pled were completely unable to withstand a motion for judgment on the pleadings. At that point, no opposition came and no appearance by appellants at the hearing on the motion for judgment on the pleadings. Judge Guilford gave them the benefit of the doubt and said, well, we'll just move forward anyway. Actually vacated the motion for judgment on the pleadings and invited a motion for summary judgment so that plaintiffs would have the opportunity to oppose it. Their opposition was two weeks late. Their evidence was a week later than that, and after that, they filed the motion for relief. So I think the record very clearly gets us to the right result, which is the judgment that we have entered by Judge Guilford. Did the district court proceed under Local Rule 7.2 and say that the plaintiff's failure timely to oppose the motion for summary judgment could be, quote, deemed consent to granting the motion? The court did strike the opposing papers, Your Honor, but also considered them in its judgment in drafting its final order. So while the court did deem the opposition papers late and strike them, the judge also in his analysis in the order on the motion for summary judgment considered the arguments and the evidence presented even though it had been stricken. So we have several bases for upholding the ruling on the motion for summary judgment, one of which is that even considering the evidence presented in opposition to the motion, there is no evidence to withstand scrutiny under the motion for summary judgment standard. The hearing on the motion for summary judgment, Your Honor, is part of the record, and it went for about an hour, and it is a nice reference to sort of the history of what went on in this case and how Judge Guilford made every effort to accommodate the interests of justice and provide every opportunity for plaintiffs and appellants to do what they now are seeking to do. They simply did not do it then, and they cannot do it now because any opposite action taken by this court would mean that we restart the case and that it would be a very different case than it was the first time around. Any further questions?  Thank you, Your Honors. Your Honors, if you read Judge Guilford's opinion, he didn't – he recites that he considered the opposition, and then he relies entirely on the deemed admissions as the basis of his opinion. He – the bottom line is it's not a decision on the merits. Had it been a decision on the merits, that's a different case. Hold on. He says on his analysis, and I read, but in the interest of justice, nevertheless, the court now reviews the merits of plaintiff's claim under 1962 C&D, and then he gets into plaintiff's claims under 1960. He discusses RICO, the predicate acts, mail fraud, wire fraud, murder. He goes through all of that. Sure. And then he says, but of course, there are no facts to support it because the plaintiffs have admitted they don't have damages, they don't have any facts. That's a recitation of the admissions. The facts that he bases that decision on are a recitation of the admissions. Why didn't you comply with anything? I mean, the county sent you a letter saying, in street vernacular, hey, you dispensed the case against the city, are you going to do the same against us? You didn't respond. And then you knew you had all these deadlines and you didn't meet any of them. Why? The problem with this case, look, not a perfectly litigated case. You know, you're not going to get away with that. Why? I mean, you knew what all these deadlines were, or didn't you? There were some changes, by the way, in the summary judgment deadlines. The old deadline was 14 days. Now it's 28 days. And I advised the judge of that. And that was the problem. You were late on everything. I wasn't late on everything. I'm the plaintiff. I'm litigating. I do my Rule 26 stuff timely, by the way. Us plaintiffs. Plaintiffs are timely on their Rule 26 stuff. We have it. We have the meeting. We do the report. We produce the documents. We produce the lists. Then you were given reprieve from your failure to answer for the motion for judgment on the pleadings, and you didn't respond in a timely fashion to all the things that you should have responded on. Because ‑‑ If we let you get away with this, the district courts turn into a shambles. They're already overworked. It's not ‑‑ okay. So they're two separate things. Okay. I'm sanctioned, right? Me. I pay the sanction, which you should make a discovery sanction. Because all I was doing was trying to get the court to clean up the discovery. That's all me. Let's talk about the clients. Let's talk about the plaintiffs. Plaintiffs are entitled to their day in court. And the reason why the plaintiffs didn't get their day in court was because I was faced with what turned out to be an insurmountable discovery problem. It wasn't plaintiffs' fault. It was defendants' fault. I get the Rule 26 from defendants late, and it has a long list of documents that they're going to produce, and I don't get them. I don't get ‑‑ we're talking about initial discovery. I don't get the initial discovery I'm entitled to under Rule 26 until almost a year into the litigation after the discovery cutoff. So the cutoff is October 12th. I get those documents October 22nd. And it seems to me because you were tangled up in the litigation against the city of Santa Ana that they went away. No. The city of Santa Ana was an OSC, and it was not particularly entangling. It was a motion in each case to seek relief, and that was short and sweet. The city of Santa Ana was small litigation, as it turned out, unfortunately. The problem was that we're trying to respond to discovery, and I need discovery, and I get the redacted documents. I mean, please take a look at the redacted documents. What do they ‑‑ you know, what do they ‑‑ I'm drooling to get them. When I finally get them, they're useless. But it looks like ‑‑ You knew the minute you got them, they were useless. I knew the minute I got them, they were useless. October 22nd, I knew they were useless. Went and said, get me unredacted documents. Went to the court and made three ex parte motions and said, look at this stuff, Judge. Is that the way you do it generally, make ex parte motions? We were short on time. It's not ‑‑ and this judge does not like ex parte motions, but we were short on time. I'm trying to say, look, Judge, this is a severe problem. We can't proceed with the litigation timely because we have not been given discovery, and when we finally got discovery, late from the defendants. It was useless. But when you get redacted documents, when you see redacted documents in a case, Your Honor, by and large, you want to see the originals, and by and large, that's the smoking guns. That's the facts you need. That's why it's been redacted. So we had the evidence. It was just blacked out. And I say to the court, how can you do a summary judgment motion without seeing these documents unredacted? I said, you're not informed. You're not informed about what the facts of the case are. The judge said, well, I've ruled on those motions. I said, okay. That's why we're here. Who did you name as a defendant besides Orange County? Sheriff. The Sheriff. Yes. Yes, Your Honor. I named the Sheriff. I've given a little discussion about how we got where we are and why the problem exists in that jail. Do you agree that Orange County is not a proper defendant in a RICO case? Yes. I do. I do. No, the way it was done in the L.A. police case was that they named the mayor, the members of the city council, and the chief of police. And so in this case cleaned up, you would name the board of supervisors. It's the old way you used to do a 1983 case, but we don't have to do that anymore. In a normal one, we can just name the county. A little bit of a loss. You indicated that you were sanctioned. You appealed from that sanction. I do. You are appealing from it. Yes, Your Honor. Oh, I thought just a minute ago you were kind of saying, I paid it and that's all there is to it. Did you pay it? I did pay it, yes, Your Honor. You paid it after you were held in contempt for failure to pay it. Is that correct? No, not quite. There was a subsequent order. And what the judge said was, look, I said, you know, that's a lot of money. The judge said, well, when can you pay it? And I said, well, I'm going to get part of the fee award in Pierce v. County Orange, which was a jail class action on the disabled. And when I get that fee award, I can pay it. And basically that's what the judge did. He stated until that fee award was paid, and then I paid it out of that fee award. But remember, there's a long history between the sheriff and the county and the jail and me personally as counsel. And those sanctions are really an attempt to get at me personally, and they're inappropriate. But if the court finds the sanctions were appropriate, they should at least be converted to discovery sanctions, which is what they are. It's a state bar issue. So you agree that the county is an improper party. What evidence did you tender against the sheriff personally? I'm sorry? What evidence did you tender personally that identifies the sheriff? Oh, that the sheriff knew. No, I mean, as apart from a conclusory allegation. What affidavit, what evidence did you tender to the court? I tended to court the redacted documents, which are the sheriff's own documents. They are all sheriff's department documents. Right. So that's it. More than enough, if they weren't blanked out, Your Honor. More than enough to show an ongoing path. You know, it's pages and pages. Unredacted, that's the smoking gun. Unredacted, they will show, bail bondsmen they will show, gang members who are shot callers in the jail, referring strong-arming prisoners to use those bail bondsmen. They will show kickbacks paid to gang members. But you didn't tender any affirmative evidence on your own. Is that true? Affirmative evidence. Yeah, you didn't have an affidavit from somebody that said, this is what happened and the sheriff was personally involved. I did a declaration that's in there, based on my knowledge, because I go back to Stuart B. Gates and Judge Gray, may he rest in peace. I mean, I go all the way back to that. So I knew how that worked. None of those things work without at least the knowledge of the sheriff. I mean, the sheriff is physically located. No, I understand that. In an office that's right there. Okay. Any further questions? Mike, let me just ask you one question about this declaration of Christina Springer. You voluntarily dismissed the lawsuit in the city of Santa Ana on May 18. She says on July 23 she sent you a letter requesting that you confirm whether you were going to proceed or dismiss this lawsuit. I further advise that if plaintiffs intended to continue with the lawsuit, I would immediately proceed with discovery and dispositive motions. Mr. Herman did not respond to this letter. It's attached as Exhibit D. Did you respond to that letter? I don't know. I honestly can't tell you whether I responded to that letter. On July 30, I served discovery request notice depositions. August 10, I sent another letter talking about the MJOP. I requested Mr. Herman meet and confer. He didn't answer. Is that true? I know that we discussed the depositions of the plaintiffs. On August 24, you said the case would proceed for a little while because it will lead to dialogue with the sheriff. Is that what you said? I'm not sure that those were my words. There are two different things in this case. There are the things which survive if they survive here, which are the damages claims of these plaintiffs. Then there's something else, which was the hope for injunctive relief to get rid of what's called guerrilla bail bondsmen, people soliciting on the streets. What I asked was whether those were your words or not, and you're not sure. No, I'm not sure, no. Thank you. Anything further? No. Thank you, counsel. The case has heard and will be submitted for decision. Thank you.
judges: Duffy, Trott, Thomas